# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                     Case No. 4:19-cr-00180 KGB

TYRONE VINCENT LUNNIE                                                       DEFENDANT

## Memorandum and Order

This matter comes before the Court on Defendant Tyrone Lunnie's Motion for Release on Bond (Doc. No. 31 ). On August 23, 2019, the Court ordered Mr. Lunnie detained pending trial, and he has been in custody since. He now seeks temporary release pursuant to 18 U.S.C. § 3142(i) for what he contends are compelling reasons related to the recent COVID-19 global pandemic.

According to Mr. Lunnie, his present status in custody poses a lethal threat to him because he is 48 with a history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen. He claims these underlying medical conditions render him at greater risk of serious illness or death should he contract COVID-19. The court is sympathetic to his concerns, but Mr. Lunnie is not alone. COVID-19 presents serious ongoing concerns for millions of people, especially those with certain underlying medical conditions. On balance, Mr. Lunnie has not shown a sufficiently compelling reason that his release is necessary, particularly in light of the Court's prior finding that he is a flight risk and danger to the community. The Court could fashion no condition or combination of conditions that would reasonably assure it of Defendant's appearance and the safety of another person or the community. He has not made even a threshold showing that his

proposed release would necessarily better address his health concerns than if he were to remain in custody. Furthermore, his proposed release plan would likely increase the risk of harm to others. The court therefore summarily denies Mr. Lunnie's motion.

## Discussion

18 U.S.C. § 3142(i) of the Bail Reform Act provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

18 U.S.C. § 3142(i) (emphasis added). A defendant bears the burden of establishing circumstances warranting release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

In *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020), the district court provides an excellent analysis of recent cases around the country where courts are addressing whether defendants should be released from custody or allowed bond conditions based solely on the present health crisis. There, the Court conducts an in depth study of cases dealing with the pandemic, and the myriad of ways court favor addressing the matter. The *Clark* Court concluded that the inquiry into whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic is appropriately considered on a case-by-case basis under the "another compelling reason" prong of § 3142(i). In making that determination, the Court noted:

Whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic is appropriately considered on a case-by-case basis under the "another compelling reason" prong of § 3142(i), as the district court did in [*United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020). There, the court denied temporary release based on the COVID-19 pandemic where the defendant was of advanced age and suffered from dementia and a history of stroke and heart attack because, among other things, there had been no reported incidents of COVID-19 within the facility where he was being housed, and the Bureau of Prisons "is taking system-wide precautions to mitigate the possibility of an infection within its facilities." *Id.* The mere possibility of an outbreak at the facility was not a compelling reason to justify his release. *Id.*

The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the undersigned will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*United States v. Clark*, 2020 WL 1446895, at *2-3. The undersigned finds this analysis persuasive, and will apply it to Mr. Lunnie's case.

1.  The Original Grounds for Lunnie's Pretrial Detention

The court first considers the original grounds for the defendant's pretrial detention. *See Hamilton*, 2020 WL 1323036, at *1-2 (first considering the rebuttable presumption under § 3142(e) before considering whether the COVID-19 pandemic warranted temporary release

under § 3142(i)); *Buswell*, 2013 WL 210899, at *5 (observing that "the facts surrounding the underlying reasons for the defendant's detention are relevant to the [§ 3142(i)] analysis"); *see also United States v. Dupree*, 833 F. Supp. 2d 241, 247 (E.D.N.Y. 2011) (considering the circumstances leading to the defendant's revocation of pretrial release). After all, if a defendant is seeking release under § 3142(i), the court has already found that pretrial detention was warranted on the grounds that, *e.g.*, no condition or combination of conditions would reasonably assure the defendant would appear as required and/or not pose a risk of harm to others. These reasons should be taken into consideration in determining whether a defendant has presented such compelling reasons for release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order.

In this case, Mr. Lunnie is a high-risk defendant. The need for pretrial detention is not even a close call. The undersigned originally ordered him detained pending trial because he was both a risk of flight and a danger to the community. These findings are amply supported by the record. Mr. Lunnie is facing seven serious felony drug distribution and gun possession related offenses, with the potential for significant jail time. He has an extensive criminal history, is an absconder, and has previously had issues complying with conditions of release. As such, a rebuttable presumption arises under § 3142(e)(3)(A) that no condition or combination of conditions will reasonably assure his appearance or the safety of any other person or the community.

2.      The Specificity of Lunnie's COVID-19 Concerns

The court turns next to the defendant's stated COVID-19 concerns. Mr. Lunnie is 48 years old and claims bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen. Based on what we now know, those at high-risk for severe illness from COVID-19 are:

- People aged 65 and older
- People who live in nursing home or long-term care facility
- People of all ages with underlying medical conditions, particularly if not well controlled, including:
  - People with chronic lung disease or moderate to severe asthma
  - People who have serious heart conditions
  - People who are immunocompromised
    Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
- People with severe obesity (body mass index [BMI] of 40 or higher)
- People with diabetes
- People with chronic kidney disease undergoing dialysis
- People with liver disease

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April1, 2020). Mr. Lunnie does not advance that he is currently suffering from a "bout" of bronchitis, making him more susceptible to illness or death *if* he contracts the COVID-19 virus. He has therefore not established a specific and particular concern that his health puts him at an increased risk for experiencing severe illness if he were to contract COVID-19.

The remainder of his arguments about being incarcerated are general and speculative.

Mr. Lunnie suggests that he is at a greater risk of contracting COVID-19 given his presence in the Greene County jail, and that release would afford him the opportunity for social distancing and sheltering in place with one of two proposed third-party custodians—his mother or his wife. However, there are no known cases of COVID-19 at the facility, and he instead argues that an outbreak is inevitable. This argument is speculative. The facility is reportedly taking reasonable recommended precautions, including drastically reduced its inmate population, stopping all unnecessary traffic within the facility, and performing a strict daily cleaning regimen. (Doc. No. 33-1) Everyone, including staff, is screened daily before entering the jail. Each inmate is given a mat upon entering and has the opportunity to wipe it down with disinfectant daily. The North section, where federal and state sentenced inmates are held, can hold 160 and there are currently less than 120 being housed there. Greene County Jail officials advise that the North section of the jail is the absolute safest in regards to this outbreak, and have outlined the quarantine protocol used to protect the inmate population. They keep track of all medical requests, refusals and visits, and conduct medical intakes. Greene County Jail has a stock-pile of masks, gloves, and food to ensure jail officials are prepared in case of any shortages or needs that arise. Also, the Greene County Jail has closely worked with their local medical facility to ensure they get the medical attention needed if required. With these required precautions in mind, the Defendant has failed to demonstrate that his confinement puts him at sufficient risk of contracting COVID-19 to warrant reversing or modifying this Court's prior detention decision. *See, e.g., Hamilton,* 2020 WL 1323036, at *2 (denying release where there had been no reported incidents of

COVID-19 within the facility where the defendant was being housed and the Bureau of Prisons "is taking system-wide precautions to mitigate the possibility of an infection within its facilities").

In sum, Mr. Lunnie does not currently present a specific COVID-19 risk, and his arguments about incarceration are too speculative or generalized to favor release. He cannot predict the extent to which COVID-19 cases might arise at the facility any more than many Americans can predict how they might be exposed to the virus. He also cannot predict how Greene County jail might respond to an outbreak any more accurately than many Americans can predict how their local hospitals might respond. And while inmates may not be able to fully adhere to optimal social distancing guidelines, these circumstances are generalized to all individuals in the prison system and are not unique to Mr. Lunnie. He is at a facility that has implemented meaningful measures to try to minimize the likelihood of the virus entering the facility.

3. The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate the Defendant's Overall COVID-19 Risks

The Bail Reform Act allows for temporary release only if the court determines that such release is "necessary" for a compelling reason. 18 U.S.C. § 3142(i). In the context of COVID-19, this means that the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. Thus, the court evaluates the extent to which the proposed release plan is tailored to mitigate or exacerbate the defendant's overall COVID-19 risks.

Here, like in *Clark,* Mr. Lunnie's proposed release plan addresses only isolated aspects of public health officials' recommendations while ignoring other risk factors that would arise if he were released from custody. Mr. Lunnie has not set forth a record establishing that, even if someone at the facility were to contract COVID-19, Greene County or area medical facilities are unprepared to contain the virus or care for those who may become infected. Likewise, Mr. Lunnie does not address the extent to which his risks could be exacerbated if he returns to his mother's home or home with his wife. He proposes home detention with GPS monitoring. However, he offers no evidence to explain how living with his mother or wife mitigates the risk of infection. For example, he does not explain whether either of these individuals are themselves at higher risk or who else has or will live in or frequent the home or identify any screening practices or concrete COVID-19 precautions being taken there. He therefore offers nothing more than speculation that home detention would be less risky than living in close quarters with others at Greene County jail, which at least has screening practices and other reasonable COVID-19 precautions in place. He also does not address the risk of exposure to federal employees charged to monitor him if released or the health care system's capacity to provide him with adequate treatment if he were to contract the virus.

In response to the Government's opposition to the motion, Mr. Lunnie's counsel cites to *United States v. Stephens*, 2020 WL 1295155 (S.D.N.Y. March 19, 2020). There, the Court reopened Mr. Stephens's hearing pursuant to 18 U.S.C. § 3142(f). The Court's

rationale was two-fold: first, the Court found the strength of the Government's evidence at the initial hearing used to proved Defendant was a danger to the community was undermined by evidence not then available; and second, that prisoners may be at a heightened risk of contracting COVID-19 should an outbreak develop. The undersigned finds this case unpersuasive here for several reasons: first, Mr. Stephens is in New York, which is leading the country in COVID-19 cases. Not to downplay the severity of this health crisis, but the number of confirmed cases in Arkansas, particularly in Eastern Arkansas where Mr. Lunnie is housed, pale in comparison to the current crisis in New York State. Mr. Lunnie, if released, would leave Eastern Arkansas for the Central Arkansas area, the current "hot spot" for Arkansas with the most confirmed cases of COVID-19 in the state. Second, the New York Court determined, should an outbreak occur, it would impose substantial medical and security challenges. This Court will not operate on speculation, as previously stated, and the Greene County jail administrators have significantly reduced the number of inmates housed at its facility. There is no indication that there are any present and measurable medical and security challenges at the Greene County jail that would even rival the situation facing New York at this time. Third, the New York Court found the defendant had no violent background and no prior convictions involving violent conduct or gun charges. That is not the case with our defendant, Mr. Lunnie. He has an extensive criminal history, and the undersigned determined based on the evidence that he was both a flight risk and a danger to the community.

On balance, the Court is persuaded that this factor is neutral. It is speculative to predict whether Mr. Lunnie is safer in terms of his overall COVID-19 risks whether he is in custody or temporarily released to live with his mother or wife.

      4.      <u>The Likelihood that Defendant's Proposed Release Plan Would Increase COVID-19 Risks to Others</u>

In considering temporary release under § 3142(i) based on circumstances related to COVID-19, it is also appropriate to consider the likelihood that Mr. Lunnie's proposed release plan would increase COVID-19 risks to others, particularly if he is likely to violate conditions of release. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.

In this case, these considerations do not support release. This Court originally detained defendant because he was both a risk of flight and a danger to the community. He has an extensive criminal history, a history of noncompliance an absconding, and he is charged with seven serious drug and gun charges that will result in significant prison time, if convicted. Given the § 3142(f) and (g) considerations, the Court believes Mr. Lunnie will likely violate any conditions of release the court may impose if the court were to issue a temporary-release order. As another court observed:

> [w]hile the location monitoring that he proposed may offer useful information about where he is, it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would

make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled substances without detection.

*United States v. Martin*, 2020 WL 1274857, at *4 (D. Md. March 17, 2020). Here, Mr. Lunnie has been unable or unwilling to remain law-abiding for most of his adult life. The Court has no reason to believe he would suddenly become compliant now. Meanwhile, supervising such a high-risk offender out in the community will place pretrial services officers at heightened risk of contracting the virus. "[L]ocation monitoring is not a limitless resource, nor is its installation and monitoring by the United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing." *Id.* And, if Mr. Lunnie violates his conditions of release, law enforcement officers will be forced to expend valuable resources during a national crisis to take him back into custody and return him to custody, both increasing the risk to them of contracting and spreading COVID-19 and further increasing the risk to the prison population when he inevitably returns to the facility. These additional considerations weigh in favor of denying the motion.

### Conclusion

Mr. Lunnie has not established compelling reasons sufficient to persuade the court that temporary release is necessary. Nor has he established that his "lifelong bouts with bronchitis" puts him at an increased risk for experiencing severe illness if he were to contract COVID-19. His arguments regarding the risk of an outbreak at his facility is speculative.

Furthermore, he has not established that his proposed release plan would necessarily alleviate his overall COVID-19 risks. To the contrary, it appears that, if he were released, he simply would be trading one set of problems (*e.g.*, reduced opportunities for social distancing at Greene County jail) for another set of problems (*e.g.*, contamination risks associated with being in an uncontrolled environment). Meanwhile, his proposed release plan would place United States Probation pretrial services officers at risk in supervising him and, if and when the temporary release inevitably ends (whether because the COVID-19 risks subside or because he violates his bond), it will place the United States Marshals Service officers at risk in re-apprehending him and the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. On balance, Mr. Lunnie has not established a compelling reason that temporary release is necessary.

IT IS THEREFORE ORDERED that the Motion for Release on Bond (Doc. No. 31) is DENIED.

SO ORDERED THIS 2nd day of April, 2020.

_____
UNITED STATES MAGISTRATE JUDGE